2007-3267. We'll be ready when you are, Mr. Bonsher. Thank you, Your Honor. May it please the Court, Your Honors. I'm Fred Bonsher on behalf of Barbara Lensing. In our Lindahl case, we have a case in which it sets a standard as to whether, quote, there has been a substantial departure from important procedural rights, misconstruction of the governing legislation, or some like error going to the heart of the administrative determination. That's what you need to give us, essentially, jurisdiction over the issue. Right. And then I think the key to this entire matter here is Van Eken-Riles, I hope I pronounced that right. Van Eken-Riles, yeah. Van Eken-Riles v. OPM, the decision of this Court. In this particular case, looking at Van Eken-Riles, this Court indicated at page 5 of its opinion that both OPM and the MSPB gave no weight at all to Van Eken-Riles' medical evidence and then found that she had failed to prove her disability. That's exactly what we have here. Didn't Van Eken-Riles go on the question of medical evidence versus personal subjective evidence? That's not quite the issue here, is it? This case was way more, in my estimation, persuasive than Van Eken-Riles because we have objective evidence in addition to just opinion testimony or conclusory evidence. I was thinking about if the Court totally ignored the evidence, the test evidence, of Dr. Baustenberg. Well, you know, this is a claim we hear frequently in these kinds of disability cases in which somebody said, well, the evidence was ignored as opposed to that the evidence was considered and rejected. And I understand why, because we can't get at the question of whether the consideration and rejection of the evidence was erroneous or not, even if it plainly was. That's just outside of our purview. But here it does look to me as if, reading the administrative judge's opinion, that she did walk through all the evidence. She considered the evidence. She rejected it, maybe for reasons that if this were substantial evidence review, we would be suspicious of. But we can't get at that. So to me, and it's the heart of the case to me, and I'd like you to address this, if you would, at least to help me, is whether there was a violation of the rule that was recited in Van Eken-Riles, not the principal rule that Judge Leary was referring to, the objective versus subjective, but something that Van Eken-Riles mentions on page, well, I have it at page 1043 of the 508 Federal Third Report. And you have a different copy, it looks like. Well, let me, it's toward the end of the opinion paragraph that begins, but here, do you have that? It's at the end. Right, now, if you go down after the citation to the CFR section, there's a sentence that reads, even as here the medical evidence indicates physical or mental incapacity so severe as to clearly establish an inability to perform the tasks of any job, such as inability to leave home, drive, or accomplish even basic lab tasks, the medical evidence need not enumerate what specific job tasks are rendered unfeasible by the disability. Now, that, I take it, is at least in part your contention that that rule was not applied in this case. That's correct. In fact, Dr. Van Helsenburg, both in his written report, addressed all the nine criteria of her job and said why she couldn't do that. He also testified as to why she couldn't do that. Well, I'm looking to a different question, the question that I'm looking at. Did the administrative judge, when she said, as she did on page 34 of the appendix, the red appendix I'm looking at now, she said a physician's conclusion that an employee is disabled is persuasive only if the physician explains how the medical condition affects the employee's specific work requirements. Did that constitute a legal error in light of the Van Ecken-Riles statement of what amounts to an exception to that rule? I believe yes, because all the, there's, included in the record in the doctor's, even the doctor from the postal service concluded she could not do her job and she couldn't do any job. We didn't, I know Van Riles said that you can, you don't necessarily need to address all the requirements if it's clear she can't work at all and you can make that inference. And here we had specific direct evidence and objective evidence. It's like, I'm waiting there and I think, what else could she have done? Well, what does he say? She could have said very simply or had one of her doctors say, and this renders her unable to, boom, her job. Whatever it is. They all said that. Well. They all said that in their written letters and Dr. Van Ecken-Riles. It takes too late to go one step further beyond what Judge Bison read to you. She says in this case there is nothing in the record from any medical provider that specifically relates any of appellant's medical conditions to her duties. That's exactly right. Isn't that a pretty easy thing to do is to say. Yeah, and we showed that. We showed that specifically. We went through. Where? Can you show us where a doctor says this duty she cannot perform? Yes. They say such things as she can't remember locations, she can't understand instructions, she can't maintain attention over extended periods, she can't maintain regular performance. I mean they say a lot of things that indeed cause me a great deal of sympathy with her condition, but where do they say she cannot do X and X is her job? That was specifically what Dr. Van Osenberg said in his report. Of course, we're getting here a little into the facts, which we have very limited review of. Yeah, both in his report and then at pages, appendix 101, starting at 106. He went through every one of the job requirements and said why she couldn't do those. Well, this is a point on which probably nothing should turn, but technically he wasn't a medical provider as such. He was not an M.D. He was a Ph.D. psychologist. He was a consultant brought in. That significance should be attached to that, but at least it seems to me by its terms her statement is not inaccurate. I don't think anybody other than Dr. Van Osenberg had any evidence as to the specific job test. All the other doctors said… There's nothing in the record from any medical provider. All the medical providers, for example, Dr. Kinati said… Well, Miklaschek probably gives the most detailed report, but isn't there any… Well, he went through all the things what she couldn't do and say… In any event, these are facts that we can't evaluate, right? In the left-hand guidance, Merrill Graham says she's unable to return to work at this time. In fact, she's dealing with major depression and significant anxiety. She's unable to return to work at this time. These are alleged facts, are they not? Those were medical evidence and medical… But we're not entitled to review the evidence or to even apply the statute to evidence. But you, as you indicated in Van Eken or Annals, medical evidence need not enumerate what specific job tests are rendered unfeasible by a disability. We did. We won't be on that. We did show that. We also indicated in that case testimony or written statements regarding symptoms of a saliva biopsy. But you asked what could she have done more. Couldn't she just have had Dr. Miklaschek or one of the other physicians, say, link these conditions somehow to her job performance? They all said that she couldn't return to work at all. They were aware of her job. And even the postage doctor or the post office doctor said knew what her job was and was able to report to human resources that she cannot do her work. And to sit there and say, well, we totally leave out the objective evidence. And that's the MMPI-2 and the other work done by Dr. Van Ostenburg, the more clinical multitaxial inventories that he did. Those are objective, recognized, scientific things. And he pointed out how those showed how she could not do her work. And it's not just subjective opinions. And I'm thinking, well, this is the science of psychiatry and psychology. It's not quite as exact as other sciences. But I'm thinking, what's an analogous situation trying to clear that? Let's assume Michael Phelps, the winner of eight gold medals, breaks his leg. His ER doc says, well, it looks like you've broken your leg. That's your opinion. You won't be able to swim for at least 12 months. The resident, the attendant, the team surgeon also look like you've broken your leg. In my opinion, you can't swim for at least 12 months. Mr. Phelps sent to a radiologist who administers objective tests. The best ones, as Dr. Van Ostenburg said on page 17 of his testimony, these are the best, most commonly used tests that show objectively whether she's disabled. So let's say Mr. Phelps is sent to the radiologist who uses an MRI and X-ray. You can cut to the chase. We get the idea. That's the same thing. But if the doctor says, well, I don't believe the radiologist and the rest is subjective. Take that very case. Suppose that all that evidence goes before the MSPB judge. And the MSPB judge says, yes, I've looked at all this evidence. But you know what? I don't believe that it proves that he broke his leg. It's just an implausible conclusion. But we couldn't touch it because it's factual, right? No, not right. Because that goes to the heart of the administration. You mean if it's wrong, we can't touch it. But if it's really wrong, we can? No, I think you said in Van Eken. Van Eken Riles. Van Eken Riles. That there has to be some kind of way. And she can say, I weigh this. I can give this very little weight. There's no weighing here. She's done weighing. All the evidence on the scales of justice went one way. Not disputed in any way. Objective and subjective. Mr. Bonchior, are you asking us to kind of create a legal presumption that people with mental difficulties receive a kind of a special treatment? No. I'm saying that's what I know. Well, there's a rule that you've got to link your incapacity to your job performance. And you seem to be saying we don't need to do that in this case. All the doctors say she can't do her job. And she can't go back to work at all. Dr. Van Oster, test her objectively. Well, that's the fact. Get this back into the factual battle. We can't deal with the facts. So you've got to give us a legal argument. Your best hope was the one Judge Bryson was moving towards. But that seems to be creating some legal presumption about mental incapacity that I'd like you to address. As this court said, it was tantamount to exclusion of all evidence in Van Aken's trials. The same way this court said absolutely no way it was given to certain evidence. In this case, no way it was given to any of the evidence. I don't get what that is. To me, what do we have courts of law except to weigh the evidence or give people procedural standing? Because that's what Congress told us we can't do is weigh evidence. Well, that's where the difference is. And that's a disability case. No, I think the Supreme Court and Lindahl and Scroggins said disability cases, you really treat them the same way. But you can't. But to me, what Ed goes through, Read all, right? Right. Even by a five to four vote, we came within one vote of having no voice in disability cases. The five said, yes, you can look at disability cases, but you may not look at factual ingredients of disability cases, right? And we're all on the same page on Lindahl, right? Right. Okay. Let me ask you this. Pursuant, again, to this section of Van Aken Riles. Van Aken Riles cites a case which I take it is the lead case in the MSPB for this exception to the usual rule that you must prove relation between the disability and the specific job performance aspects. And that's the Mullins-Howard case that's cited in Van Aken Riles, and I think there have been a number of board cases since then. Did you make this Mullins-Howard argument to the board? You represented Ms. Lansing, I guess, before the board. Did you make this argument in your presentation? I can't say exactly that we did, frankly. Okay. We argued that in this case, we were basing it mostly on your decision, saying in Van Aken Riles, we hold it was the same. Van Aken Riles was decided after the board decision, wasn't it? No. Was it? Yeah, Van Aken Riles came a year after the board's decision. All right. Well, we'll move on. Mr. Barsher, you've consumed all of your time, but we'll give you two minutes back of rebuttal. All right. Thank you. And we'll hear from you in a pinch. Good morning, Your Honors. May it please the Court. Petitioner in this case is asking this Court to review factual determinations. We've heard that, and I think you properly say that. But you can see that we're more interested in the potential legal concern over total incapacity. Why doesn't that abrogate any need to inquire into nexus? Well, in this case, Your Honor, the administrative judge at the MSPB actually found on page 35 of the red appendix that the medical evidence must show that the employee's symptoms are so severe as to prevent her from performing the job duties. And in this case, she found that that was not the case. That is exactly, it seems to me, what the Van Aken Riles sentence that we've been talking about says is not required in a certain category of cases. Correct? Isn't that your understanding of that sentence from Van Aken Riles? Yes, Your Honor. Right. So the fact that she says this, and this is the second time she says it, actually, it seems to me, is unhelpful to your case because she's imposing what looks like an absolute rule when Van Aken Riles says that rule is not absolute. So my question to you is, does she also reach the conclusion that the predicate for applying the Van Aken Riles exception, if you will, was satisfied here or not satisfied here? Total incapacity. Yes, it is the Board's opinion that there is not total incapacity here. Where does she say that? There is a substantial amount of evidence. In fact, there is no evidence from the doctors other than Dr. Van Ostenburg that Ms. Lansing would be unable to perform the duties of her job. For example, on page 34 of the appendix, the administrative judge notes that Dr. Gwandi... We're getting back into the nexus point again. I understand that's where you want to go, but I think Judge Bryson and I are asking you to help us decide whether the administrative judge made a decision that there was no total incapacity. Right. That's exactly my question. Yes, Your Honor, and I apologize for not answering that clearly. She did make a determination. Where is that? If you could help us. I believe it is on page 34 of the red appendix. 34. She noted that, I find that none of the medical documentation noted above demonstrates that the appellant is disabled from useful and efficient service. Well, but my problem with that is that's the beginning of her discussion which incorporates her requirement that there be a showing in order to show disability from useful and effective service or efficient service, that there be a nexus between the disability and the particular job requirements. What I'm looking for is there anything that she says that indicates that this person was not so generally disabled as to be incapable of performing in any way. In looking at the judge's interpretation of the doctor's notes, she notes that one of the therapists, Mr. Graham, noted that the disability was temporary in nature by indicating that she would not be able to work at this time. Therefore, that indicates that there will be a point in the future where she would be able to work, and therefore I think that that indicates that there is no total disability in this case. And you can find that on page 34 of the Red Appendix, Your Honor. Do you know if this, I guess it's a Mullins-Howard issue, that's been around for about 10 years, I think, in the Board, that this exception that the Board has created and that we seem to have adopted in Vanniken-Ross, do you know if that was argued to the Board? I am not aware of that, Your Honor. You're not aware that it was or you don't know? I'm not aware that it was or was not argued before the Board. And as Your Honors have noted, this case is not a case like the Vanniken-Ross case where the Board discounted subjective evidence completely because there was a lack of objective evidence. In this case, the Board looked at all of the evidence presented and just discounted it for individual reasons. For example, the Board discounted the testimony and report of Dr. Van Ostenburg because Dr. Van Ostenburg had only seen Ms. Lensing once and it was two years after the onset of the alleged disability. That was a reason for discounting the weight of evidence that the Vanniken-Ross case said was a good reason to discount the evidence. But you would agree, would you not, with your opposing counsel, that Dr. Van Ostenburg did go down and tick off the various job performance requirements and say that she couldn't perform them? So it raises a question as to what the administrative judge meant when she said that no one did that. And I guess she does technically say no medical provider. Was she, do you think, distinguishing Dr. Van Ostenburg? I don't think so. I don't think Dr. Van Ostenburg's medical records. And then also she notes on page 36 of the red appendix that although Dr. Van Ostenburg concluded that the prognosis was poor, that with potentially a different therapist and some psychoanalysis and different medication she could improve to the point of not only working part-time but eventually working full-time again. But you wouldn't argue that there is a requirement within this requirement, the general requirement that you line up the disability with the particular job requirements, that there is a requirement that the person making that determination has to be an M.D., right? I mean it could be, for example, a Ph.D. psychologist would be sufficient to satisfy the requirement. That is correct. It was just that this evidence was not only discounted by the administrative judge, not only because Dr. Van Ostenburg had only met with Ms. Lansing one time and two years after the onset of the alleged disability, but also the fact that he indicated that with treatment and medication she could improve to the point of working again. There were other reasons to discount that testimony. He said it was conceivable. I mean I thought, I read his analysis and frankly reading his analysis and then reading the administrative judge's account of his analysis made him sound much more optimistic in her account than his report actually seems to reflect. Yes, but again the administrative judge gave that report, again, less weight given the time frame. And the burden is on Ms. Lansing to demonstrate that she is entitled to the disability benefits. Both OPM and the Board considered all the evidence that was presented. Not only did the evidence other than Dr. Van Ostenburg's report fail to link the medical condition to the job duties, but OPM and the Board also found that the evidence of her condition did not entitle her. She discounted, the administrative judge discounted Van Ostenburg's testimony because there had only been one meeting between them before the testimony. Is that a reasonable basis to reject Van Ostenburg's commentary? Not to reject it, but to afford less weight to it than other commentary from other physicians and health care providers who've had a longer term relationship with the appellant. And in this case, actually in the Bennigan-Riles case, that was something that this court recognized was a reasonable basis for looking at the evidence and discounting it. Do you think that this is a case, as you view what the administrative judge has said, in which the denial of disability is predicated principally on the failure to prove disability itself or the failure to prove that the disability is likely to last for at least one year? Well, according to the administrative judge's opinion, the judge recognized that Ms. Lansing clearly suffers from depression, but she failed to meet the burden that's outlined in 5 CFR 844.103 in order to prove that she is entitled to the disability benefits. So therefore, Your Honor, I believe that the answer to your question would be that yes, it would be a question of not only the inability to perform the job, but also the length of the duration of the disability. If her condition persists, can she apply again after a period of time? I am not aware of that, Your Honor. I can provide that information to the court if you like. Well, I suppose if she gets denied disability, then she's required to go back to work, and if she doesn't go back to work, she gets terminated for cause. Isn't that the usual course of events? I'm not aware of that, Your Honor. I think that's the usual way. That's why this is bad news when somebody who is disabled ends up not winning their disability claim because pretty shortly thereafter you end up with a for-cause dismissal, and then you get nothing. Okay, Your Honor. Again, this is not a case like the Bennigan-Riles case where the board dismissed all the subjective evidence simply because of a lack of objective evidence. And for the following reasons and the reasons outlined in our brief, we respectfully ask this court to either dismiss this case for lack of jurisdiction or affirm the board's decision. Thank you. Thank you, Ms. Lynch. We'll hear from Mr. Bonsher for a couple of minutes. Thank you. Ms. Lensing has been terminated for cause because she didn't go back to work. She hasn't worked since she attempted suicide in 2004. All this testimony and everything we saw was two years that she'd been disabled, more than the 12 months already. To assert that it wasn't going to last for 12 months because at page 33, the ALJ says, he opined, talking about Mr. Gunati, that the appellant's symptoms would improve with medication and therapy and she would be able to function as an outpatient babysitter, referred to his reports. And he says, the prognosis is somewhat guarded as the patient has multiple, and this is page 43, stressors in her life and a long history of substance abuse would improve. The patient will abstain from substances, continue with medication as prescribed, continue with intensive medical therapy. It's not at all what he said. Looking at the case of Mullins-Howard, in that case, the court looked at the personal accounts, reports to the doctors, and the court said that under those circumstances, it was unnecessary for her doctors to give a detailed understanding of the appellant's specific duties as a GS-13 computer specialist programmer in order to render opinion that the appellant's psychological condition rendered her unable to perform successfully in her position. All the doctors said that. And then we want to be on that with Dr. Van Ostenburg, addressing each one of those nine requirements of the job. He said she couldn't do any of them, and he showed by subjective or objective testing, recognized throughout the entire United States that she couldn't do anything, couldn't work at any job. And that means all the requirements of that case and everything else. Finally, with respect to Dr. Graham, Merle Graham, one of the medical treaters, said in her report, she clearly feels uncomfortable or safe or doesn't restrict that. Given this resulting emotional disability and the fact that she is dealing with major depression and significant anxiety, she's unable to work at this time. That was in March 2005, about eight months after she was no longer working because she attempted suicide. That doesn't limit her saying that she's not going to ever be disabled. It says, looked at her today, she's still disabled, period. I think it's very clear. Here's a woman who can't do her job, can't do any job, tried to work as shown in the record, but unable to work at anything. Severe, gross pathology according to Dr. Van Ostenburg. All the doctors say she's disabled. All the case law supports us, and she should be granted disability. Thank you. Thank you, Mr. Blanchard. I think we have your argument. Let's take the case under advisement. Thank you, Your Honors.